Moncrief, J.
The testimony being closed, if for any reason or ground upon which the motion to dismiss the complaint could have been made or properly granted, it was error to deny the application^ which appears to have been in general terms. The court had the right to call upon the defendants to state the ground upon which it was claimed; but whether stated or not, if the reasons for granting it are sufficient in law, the *38 refusal as a general rule, must be held to be' erroneous, and the exceptions well taken.
The action is for goods ordered by the defendants to be purchased by the plaintiffs, who were' “commission merchants,” and the complaint avers that acting under such order, they did purchase and pay for certain guns, and shipped them to the defendants, forwarding to them a bill of lading and invoice thereof, and claims the purchase price of the said guns, and the shipping expenses, and commissions of the plaintiffs.
The invoice defeats the existence of the relation between these parties. It is of “ hardware purchased by order, and for account and risk,” &c. The evidence clearly establishes that the alleged order never was filled by the plaintiffs; the guns shipped by them were not purchases made by them upon the order of and acting as the factor or agent of the defendants. The plaintiffs sent on board the “Isaac Wright,” some guns purchased and other guns owned by themselves; this was not a performance of the duty devolving upon them towards their principal, the defendants. The testimony did not disclose a variance which could be disregarded or amended, but is a failure to prove the alleged cause of action, not in some particulars only; but in their general scope and meaning. (Code, § 171.) Walter v. Bennett, (16 N. Y. Rep. 250,) in my opinion, is decisive upon the question arising in this case.
Belknap v. Sealey, (2 Duer, 570, 583 ; S. C. 14 N. Y. Rep. 143, 158,) does not militate against this rule; and is plainly distinguishable from the present action. In the court above, it was- held that the judge at special term below, without a jury, having found certain facts, “a general exception to the final decision of the judge, raises only the question whether upon those facts the law was properly decided.” (Id. 158.) The complaint alleged a fraudulent contract, the answer averred a mistake; and the judge found the latter to be the fact, and rendered judgment accordingly.
This was lielcj a variance only, although the late Chief Justice Duer, in this' court, and two judges in the court above, held otherwise. The court could not have permitted an amendment *39 of the complaint. (Saltus v. Genin, 3 Bosw. 250, 263 ; and see S. C. 10 Abb. Pr. 478 ; Gasper v. Adams, 28 Barb. 441; 3 Bosw. 456, 520; 2 id. 590; Code, § 171.) There would seem to he no necessity of stating the proposition that the relation of principal and agent differs most materially from the position of debtor and creditor, or vendor and vendee; that is as plain as the language of the Code. An action to recover for money laid out and expended, and for his commissions as the servant and agent of another in the purchase of goods for such principal by virtue of his orders, cannot be satisfied by evidence of the sale and delivery of the goods of such agent; and therefore, in my opinion, the complaint should have been dismissed.
The exceptions were well taken, and a new trial should be directed, with costs to abide the event.
Robertson, Ch. J.
Most of the confusion in this case, as to the rights of the parties under their contract in question, for furnishing guns for the defendants, arises from the different meanings attributed in the pleadings, and by witnesses to the words “ order ” and “ ordered,” or rather the absence of explanation of the sense in which they are used. The complaint sets out as a sole cause of action “ an order ” given by the defendants to the plaintiffs to purchase a certain number of guns in England, and ship them not later than a certain day, according to a certain course of business of the plaintiffs (which it describes,) by which they were to be paid the purchase price of the articles, and expenses and commissions; and it claims a certain sum as being such purchase price, expenses and commissions, without otherwise alleging directly the expenditure of any money by them. The answer denies giving any order for guns to be purchased by the plaintiffs in England, but admits an order given by the defendants to and accepted by them for the like number of guns at a certain price, to be ready at Liverpool (England) on a certain day for shipment to the defendants, but alleges that such order was not in writing "as required by law. The term “ order” as used in *40 the complaint, was evidently intended as a direction, employment or request to huy and pay the purchase money; as used in the latter part of the answer already stated, as an agreement to huy of the plaintiffs, or perhaps to have manufactured by them, certain guns, with directions or instructions only as to the shipment or delivery. The sole cause of action in the complaint was for money paid and expended at the defendants' request, and services rendered in buying and paying for the guns. The defense was that the only transactions between the parties was a purchase and sale of guns, which was void, because not in writing.
The same ambiguity as to the words “order” and “ ordered,” appears in the only evidence offered on the trial, of the nature of the contract, to wit, the testimony of one of the plaintiffs, (Ibbotson,) and the defendants. The former, after a description of the course of business of his firm, and a statement of previous dealings with the defendants prior to August, 1858, .in which the former had sent the latter guns and gun furniture on their orders, and a promise by him, at the time of receiving one of such orders for two hundred guns, from one of the defendants, (Samuel R. Syms,) to show him a better sample .of a gun than one exhibited at that time,, went on to testify that on the 31st of August, 1858, he showed such new sample to the same defendant; and that the latter thereupon “ordered one hundred additional guns to be shipped ” at a certain time afterwards. He also stated that “ in this case the price was understood and limited at twenty shillings per gun,” although in previous dealings, they had agreed on a certain commission. The defendant, William Syms, testified that when Mr. Ibbotson came to his store, he said “he would furnish the guns at a certain price.” His co-defendant, (Samuel Syms,) testified that when Ibbotson brought the “ sample gun, he' said they were getting up the guns themselves, so that I understood they were manufacturing.” After stating that a previous order was for two hundred guns, which “ Ibbotson said they had on hand, he testified that the latter called again, and asked if they would take a hundred “more,” and he said they would. *41 On the day of such application, some doubt arose whether the guns could be furnished by the day fixed, and the plaintiffs wrote a letter to the defendants, in which they speak of “ the order for one hundred guns in addition to those ordered before,” mention the price, and express such doubt; to which the defendants answered verbally, allowing time to the plaintiffs “ to say whether they could do them or not.” On the same* day, the same plaintiff proposed to the defendants, to ship the guns before the time fixed, because they would rust “ if kept on hand.” The defendants acceded to such proposal, and the plaintiffs “forwarded the order.” In that order, as it is called, sent by the plaintiffs to their firm in England, it is said “add to order and ship January 15, 1859. Please inform us * * if these can be done. If they cannot be done, you had better hold the order until you hear from us. They will probably not take them, if they cannot be done by the 15th ¡¡January. They will advise how to ship when they receive information that they can be done; ” which is followed by the number and description of the guns, and their price. At that time, the plaintiffs were engaged in buying in England, the different parts of such guns, putting them together, and finishing the stocks which were rough when bought. This process one of the defendants testifies was manufacturing guns.
The testimony of the defendants gives the transaction rather the character either of an order to manufacture, or a purchase. . The' plaintiffs were engaged in manufacturing guns of the kind to be furnished, and known to the defendants to be so, exhibited a sample of their manufacture, agreed to furnish them at a fixed price, although previous orders had been executed for a commission, asked if the defendants would take one hundred more, in addition to two hundred belonging to themselves, previously purchased, agreed to take the time allowed by the defendants in which “ to do them.” They also wrote by the order in the letter as to doing them, and future directions for shipment; implying ,the preparation of them by themselves, and the reception of them by the defendants as . vendees. It is not pretended that'tke price fixed, was a limita *42 tion of the price to be paid by the plaintiffs, or that there was any purchase of strangers; nor was any charge made or evidence given on the trial, of any money' paid for the purchase of the guns. The testimony of the plaintiffs does not alter or conflict with this view. So that the case proved was not the employment of an agent, but either the purchase from a vendor, or an order to manufacture. The contract set out in the complaint was, therefore, not proved, but was disproved.'
Besides, if the contract of agency had been proved, there was no evidence of damages by the breach of it hy the. defendants. There- was no evidence offered of any money paid by the plaintiffs for them on such contract. Commissions and expenses were allowed in the verdict, besides the price fixed. If that were a sum to be paid to the plaintiffs for the guns, it was a sale or contract to manufacture ; and if it were a limit, no proof was given that the price paid equaled or exceeded it.
The claim made in the complaint, so entirely varies in its scope and meaning from that proved, that the defendants would have been entitled to a dismissal of the complaint, if they had put their motion on that ground, (Code, § 171; Belknap v. Sealey, 14 N. Y. Rep. 143;) but they did not. The plaintiffs, however, could have no amendment to their complaint to make it conform to the facts proved; because in this case it would change the claim substantially. (Code, § 173.) There is no resemblance between the duty of an agent and of a vendor, or their modes of discharging it, so that the two relations cannot be sustained at the, same time, by one party to another, in relation to the same matter. The confidence reposed in the skill, diligence, and good faith of an agent, is foreign to the doctrine of “ caveat emptor.” An agreement with the former, may be verbal; with a vendor, except under certain circumstances, it must be in writing. It is .not very easy to say what amendment should be made, to conform to the facts proved, if we had power to do it, or a mere hearing of exceptions at a general term, whether it should allege a contract to sell, or one to manufacture. If the amendment made was a contract to sell, the answer had set up the defense of the *43 statute of frauds; if to manufacture, although such contract would not have been within the statute, (cases cited in Abb. Dig. Sales, 744, pi. 47,) the proof was that part of the guns shipped had been purchased and part manufactured. The former would not have been a proper performance of the contract. (Hight v. Ripley, 19 Maine Rep. 137, 139.) The evidence as to the number of guns purchased, and of those manufactured by the plaintiffs, was indefinite. If the complaint, therefore, is to be considered as one for employment of the plaintiffs as agents, and expenditures by them, the contract was not proved, and no evidence was offered of any expenditure. If one for a sale of goods, such sale was void by the statute of frauds. If for the manufacture of the goods, the evidence shows that it was not fully performed, part of the goods shipped having been purchased, and no means furnished for the jury to determine how many. Yet the plaintiffs were allowed to recover the full amount claimed; and not only that, but for expenses and commissions, although the price was limited.
For these reasons, I think the decision of the learned judge, before whom this cause was tried, that there was no question of fact for the jury, and his direction that they should find for the full amount claimed, to both of which exceptions were taken, were erroneous, and there ought to be a new trial, on that ground.
I concur, therefore, in thinking the motion for a new trial should be granted, with costs to abide the event, with liberty to the plaintiffs to apply at special term to amend their complaint, as they may be advised.